Benjamin H. SINGER, Plaintiff,

v.

CREOLE PETROLEUM CORP. et al.,
Defendants.

Court of Chancery of Delaware,
New Castle.

Sept. 28, 1972.

William Prickett and Wayne N. Elliott, of Prickett, Ward, Burt & Sanders, Wilmington, and Benedict Wolf, Donald N. Ruby, and David M. Disick, of Wolf, Popper, Ross, Wolf & Jones, New York City, of counsel, for plaintiff.

William S. Potter and Blaine T. Phillips, of Potter Anderson & Corroon, Wilmington, and James F. Dwyer, and Robert M. Callagy, of Satterlee, Warfield & Stephens, New York City, of counsel, for defendant Creole Petroleum Corp.

Robert H. Richards, Jr., and Charles F. Richards, Jr., of Richards, Layton & Finger, Wilmington, and Arthur H. Dean, and Roy H. Steyer, of Sullivan & Cromwell, New York City, of counsel, for defendants Standard Oil Co. (New Jersey) and Esso International, Inc.

SHORT, Vice Chancellor:

This is a stockholders' derivative action brought on behalf of Creole Petroleum Corp. (Creole), a Delaware corporation. Defendants are Standard Oil Company (New Jersey), hereafter "Jersey," and Esso International, Inc., hereafter "International." Defendants have moved for summary judgment and for an order striking the complaint as sham. This is the decision on the motions.

The charging allegations of the complaint are accurately characterized by defendants' counsel as "couched in general and conclusory terms with virtually no specific allegations of fact, [which] question practically every aspect of Creole's business and request an accounting." After answering the complaint defendants directed interrogatories to plaintiff seeking the basis of the charges and the sources of plaintiff's information. Plaintiff answered the interrogatories but his answers were found by the court to be "wholly insufficient to give defendants the information to which they are entitled." An order was thereupon entered requiring plaintiff "to provide complete and responsive answers . . . giving all information within his knowledge together with the source thereof." Plaintiff filed supplemental answers. Defendants then moved for summary judgment as to one charge in the complaint and for an order pursuant to Chancery Rule 11, Del.C.Ann. striking the remaining charges as sham. Thereafter the Supreme Court opinion in Sinclair Oil Corporation v. Levien, Del., 280 A.2d 717, was handed down and defendants filed a motion for summary judgment as to other charges of the complaint.

Defendants' first motion for summary judgment is directed to the charge relating to Creole's "demand account" with Jersey. The ground for the motion is that this claim is barred by the 1958 judgment of this court in Mencher v. Burr, C.A.No. 673, and the release given pursuant thereto. The subject of *Mencher* was the same demand account as to which similar, if not identical, charges are here made. After extensive discovery involving all aspects of the account the parties stipulated a settlement of *Mencher* which was approved by this court following a noticed hearing. The record here demonstrates that since the prior judgment the account has been maintained as theretofore with

the advantage to Creole provided by the settlement. Plaintiff contends that *Mencher* is no bar here because a different time period is involved. This contention is without merit. Engelhardt v. Bell & Howell Co., 8 Cir., 327 F.2d 30. So also is the argument that a judgment to have res judicata effect must be based on a trial on the merits. A judicially approved settlement has like effect. Ezzes v. Ackerman, Del. Supr., 234 A.2d 444. The claim that conditions have changed since *Mencher* because Creole may need funds for expansion is groundless as it is clear that both before and since *Mencher* funds required by Creole could be withdrawn from the account upon demand. Defendants' motion for summary judgment as to charges relating to the demand account is granted.

The complaint charges that Jersey dominates and controls the business affairs and policies of Creole. Plaintiff's answers to interrogatories directed to this charge are conclusory in nature. They are predicated entirely on Jersey's ownership of more than 95% of Creole's voting stock. From this circumstance alone plaintiff "assumes" that the Creole directors and its management have not exercised independent judgment in the actions complained of and the formulation of Creole policies. This is a non sequitur.

■ But assuming Jersey's domination the extent of its fiduciary duty to the minority of Creole's stockholders depends upon the circumstances. Meyerson v. El Paso Natural Gas Company, (Del.Ch.) 246 A.2d 789. Where there is self-dealing, that is "where the parent, by virtue of its domination of the subsidiary, causes the subsidiary to act in such a way that the parent receives something from the subsidiary to the exclusion of, and detriment to, the minority stockholders of the subsidiary," the intrinsic fairness standard will be invoked. Otherwise, the proper test is business judgment. Sinclair Oil Corporation v. Levien, supra. Plaintiff's charges here relating to declaration and payment by Creole of excessive dividends and Jer-

sey's prevention of Creole's expansion of production and exploration were dealt with by the Supreme Court in *Levien* and held not to be self-dealing. Since there is no contention of fraud or gross overreaching defendants' motion for summary judgment must be granted as to these charges.

■ The complaint charges that Jersey, from time to time, has caused Creole to sell to Jersey or its subsidiaries various of Creole's physical assets at inadequate prices to the detriment of Creole and its minority stockholders. In answer to interrogatories directed to this charge plaintiff disclaims any knowledge of specific assets or particular transactions. This charge is dismissed as sham under the Rule 11 motion.

■ Plaintiff charges that "Jersey has caused Creole to surrender to defendant International, Jersey's wholly-owned subsidiary," Creole's marketing of its products and that International's services have been utilized by Jersey to protect Jersey's wholly-owned subsidiaries at Creole's expense. Plaintiff's answers to interrogatories addressed to these allegations disclose no basis within his knowledge for the charges made. The answers are simply to the effect that information to support the charges is in the books and records of defendants or within their sole knowledge, and that he "assumes" that whenever the interests of Creole conflicted with those of Jersey's wholly-owned subsidiaries the latter were favored. Thus, no good ground appears to support these charges and they are dismissed.

■ The complaint alleges that "many of International's services perform no useful function for and fulfill no need of Creole." The answers to interrogatories directed to these allegations simply state that Creole is capable of securing its own market outlets, fixing its own terms of sale and performing all the operations necessary to dispose of its products. But Creole's capability of itself performing these services does not establish a cause of ac-

tion. As the Chancellor said in Levien v. Sinclair Oil Corporation, Del.Ch., 261 A.2d 911, rev'd on other grounds, Sinclair Oil Corporation v. Levien, Del.Supr., *supra*: ". . . Sinclair had a right, if it so elected, to integrate Venezuelan production into its corporate refining and marketing operations, limited only by the fairness rule." So here Jersey had a right to integrate, through International, Creole's marketing operations. Having done so its only duty was to treat Creole fairly. The only charge of unfairness is that International favored Jersey's wholly-owned subsidiaries over Creole when their interests conflicted, a charge which I have already found to lack good ground. These allegations are dismissed as sham.

Plaintiff charges that the fee paid by Creole to International for its services is "grossly and unreasonably excessive." In response to interrogatories addressed to this charge plaintiff answered that the services rendered by International were of "no real value" because they "were not necessary for the welfare of Creole." It is apparent that plaintiff's answers were simply a throw-back to the allegations that Creole itself was capable of performing the services. No good ground having been shown for the charge of an excessive fee it is dismissed under the Rule 11 motion.

In opposition to defendants' motions for summary judgment plaintiff argues that the record discloses the existence of genuine issues of material fact which should not be disposed of under such motions. I find this argument to be without merit on the authority of Alcott v. Hyman, Del.Supr., 208 A.2d 501. Here too defendants' affidavits in support of their motions prima facie showed fair treatment of Creole by Jersey. And this is particularly so in the context of parent-subsidiary relations. The burden thus shifted to plaintiff "to come forward with further evidence to demonstrate that there is a genuine issue of material fact on the question." The lone affidavit filed by plaintiff's counsel utterly fails to meet this burden.

An appropriate order may be submitted on notice.